UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIERRA CLUB<br>85 Second St. 2nd Floor<br>San Francisco, CA 94105<br><br>    Plaintiff,<br><br>v.<br><br>LISA P. JACKSON<br>in her Official Capacity as<br>Administrator,<br>United States Environmental Protection Agency<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, N.W.<br>Washington, DC 20460,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. No.-<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I. INTRODUCTION**

1.       Plaintiff Sierra Club brings this Clean Air Act citizen suit to compel the United States Environmental Protection Agency to undertake overdue mandatory duties. Specifically, Defendant, Lisa P. Jackson, in her official capacity as Administrator of the United States Environmental Protection Agency ("EPA"), has failed to make a finding of failure to submit by New Jersey under 42 U.S.C. § 7410(k)(1)(B) for the nonattainment New Source Review requirement for the New Jersey portion of the Philadelphia-Wilmington 1997 PM2.5 nonattainment area; has failed to take final action approving or disapproving, in whole or part nonattainment State Implementation Plans (SIPs) submittals addressing the attainment

1

demonstration, contingency measures, emission inventory, and reasonably available control measures/reasonably available control technology requirements for the Detroit-Ann Arbor, MI and the New Jersey portion of the Philadelphia-Wilmington 1997 PM2.5 nonattainment areas; and has failed to determine under 42 U.S.C. § 7509(c)(1) and (2) whether the Detroit-Ann Arbor, MI 1997 PM2.5 nonattainment area has attained by its attainment date.  Accordingly, Plaintiff SIERRA CLUB brings this action against Defendant LISA P. JACKSON, in her official capacity as EPA Administrator, to compel her to perform her mandatory duties.

## II.  JURISDICTION

2. This is a Clean Air Act citizen suit.  Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a)(2) (citizen suits for failure to perform a non-discretionary duty required by the Clean Air Act).  An actual controversy exists between the parties.  This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 506 or 1146, and does not involve the Tariff Act of 1930.  Thus, this Court has authority to order the declaratory relief requested under 28 U.S.C. § 2201.  If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

## III.  NOTICE

3. Sierra Club mailed notice of violations alleged in this complaint to EPA on May 15, 2012 for the Detroit-Ann Arbor, Michigan area and May 17, 2012 for the New Jersey portion of Philadelphia-Wilmington area.  More than sixty days have passed since EPA received these "notice of intent to sue" letters.  EPA has not remedied the violations alleged in this Complaint. Therefore, a present and actual controversy exists.

## IV.  VENUE

4.     This civil action is brought against an officer of the United States acting in her official capacity.  EPA is headquartered in this judicial district.  Defendant Lisa P. Jackson officially resides in the District of Columbia.  In addition, a substantial part of the events or omissions giving rise to the claims in this case occurred in the District of Columbia.  Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## V.  PARTIES

5.     Plaintiff SIERRA CLUB is a national grassroots nonprofit conservation organization formed in 1892.  Sierra Club's purpose includes protecting and restoring the quality of the natural and human environment.

6.     Sierra Club has over 600,000 members nationally. Sierra Club's members live, work, recreate, and travel throughout the areas at issue in this case and will continue to do so on a regular basis.  PM2.5 in the affected areas threatens and harms, and will continue to threaten and harm, the health and welfare of the Sierra Club's members.  Sierra Club members' ability to enjoy the aesthetic qualities and recreational opportunities is diminished in the affected areas due to impacts from PM2.5 pollution.

7.     EPA's failure to timely perform the mandatory duties described herein also adversely affects Sierra Club, as well as its members, by depriving them of procedural protection and opportunities as well as information which they are entitled to under the Clean Air Act.  The failure of EPA to perform the mandatory duties also creates uncertainty for Sierra Club's members as to whether they are exposed to excess air pollution.

8.     The above injuries will continue until the Court grants the relief requested herein.

9.      Defendant LISA P. JACKSON is the Administrator of the United States Environmental Protection Agency.  In that role Administrator Jackson has been charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

## VI.  LEGAL BACKGROUND

10.     Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R.Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S.Code Cong. & Admin. News 5356, 5356.  To promote this, the Act requires EPA to set National Ambient Air Quality Standards for certain pollutants.  National Ambient Air Quality Standards establish maximum allowable concentrations in the air of these pollutants, including particulate matter.

11.     PM2.5 is "produced chiefly by combustion processes and by atmospheric reactions of various gaseous pollutants," thus "[s]ources of fine particles include…motor vehicles, power generation, combustion sources at industrial facilities, and residential fuel burning." 71 Fed. Reg. 61144, 61146 (Oct. 17, 2006). The effects of PM2.5 on humans are profound.  For example, long-term exposure has been associated "with an array of health effects, notably premature mortality, increased respiratory symptoms and illnesses (*e.g.*, bronchitis and cough in children), and reduced lung function." 62 Fed. Reg. 38653, 38668 (July 18, 1997).  Moreover, PM2.5 adversely affects our natural surroundings.  For example, regional haze is caused in part by particulates in the air scattering sunlight. EPA, "Haze- How Air Pollution Affects the View"(April 1999) (available at http://www.epa.gov/ttn/oarpg/t1/fr_notices/haze.pdf).  It is vital

4

that EPA take the required action in order to strengthen protection of public health and welfare against PM2.5.

12.     Pursuant to 42 U.S.C. § 7407(d)(1)(A), EPA designates areas that fail to meet the National Ambient Air Quality Standard for a pollutant "nonattainment" for that pollutant; EPA designates those that meet the standard "attainment."  *See, e.g., Sierra Club v. EPA*, 129 F.3d 137, 138 (D.C. Cir. 1997).  States with areas designated "nonattainment" must then submit state implementation plan revisions to bring those areas into attainment.  *See e.g. Sierra Club v. EPA*, 129 F.3d at 138 ("EPA must establish…a schedule by which the state must submit a [state implementation plan] revision that complies with the requirements for nonattainment areas in order to attain the [National Ambient Air Quality Standard]….") (citation omitted).

13.     The Clean Air Act requires EPA to determine whether any state implementation plan submittal is administratively complete.  42 U.S.C. § 7410(k)(1)(B).  EPA must make this determination by "no later than 6 months after the date, if any, by which a State is required to submit the plan or revision."  *Id.*

14.     If a state fails to submit any required state implementation plan, there is no submittal that may be deemed administratively complete and EPA must make a determination, and publish notice of that determination in the Federal Register, stating that the state failed to submit the required state implementation plan.  42 U.S.C. § 7410(k)(1)(B).  This is referred to as a "finding of failure to submit."

15.     EPA has a mandatory duty to take final action on any administratively complete state implementation plan submittal by approving in full, disapproving in full or approving in part and disapproving in part within 12 months of the date the submittal is deemed administratively complete.  42 U.S.C. § 7410(k)(2) and (3).

5

16. When an area is designated nonattainment under 42 U.S.C. § 7407(d)(1)(A), EPA must set an attainment date "no later than 5 years from the date such area was designated nonattainment," except that the Administrator "may extend the attainment date to the extent the Administrator determines appropriate, for a period no greater than 10 years from the date of designation as nonattainment[.]"  42 U.S.C. § 7502(a)(2).

17. The Administrator has a mandatory duty to determine "not later than 6 months after [the applicable attainment date]…whether the area has attained the standard by that date."  42 U.S.C. § 7509(c)(1).  The Administrator is also required to publish notice of this determination in the Federal Register and identify in that notice each area that the Administrator has determined to have failed to attain.  *Id.* at § 7509(c)(2).

## VII. CLAIMS FOR RELIEF

### CLAIM ONE

(Failure to make a finding of failure to submit sufficient State Implementation Plan.)

18. Plaintiff incorporates by reference paragraphs 1 through 17.

19. When EPA promulgated the rule implementing the New Source Review (NSR) program for PM2.5, it set the deadline for submittal of the nonattainment NSR requirement as May 15, 2011.  73 Fed. Reg. 28321, 28341 (May 16, 2008).

20. New Jersey has failed to submit a plan or revision that addresses the nonattainment NSR requirement of the nonattainment state implementation plan for the Philadelphia-Wilmington, NJ 1997 PM2.5 nonattainment area.  *See* EPA, Status of State SIP Requirements for Designated Areas—New Jersey: PM2.5 (1997)/Philadelphia-Wilmington (available

at http://www.epa.gov/air/urbanair/sipstatus/reports/nj_elembypoll.html#pm-2.5__1997__785

(last viewed July 25, 2012) ("latest action" is blank for the nonattainment NSR requirement).

21.     Pursuant to 42 U.S.C. 7410(k)(1)(B), EPA must make a finding of failure to submit for this requirement by no later than November 15, 2011.

22.     EPA has failed to perform this mandatory duty.

## CLAIM TWO

(Failure to take final action on administratively complete submittal by Michigan.)

23.     Plaintiff incorporates by reference paragraphs 1 through 22.

24.     The Clean Air Act requires EPA to determine whether any state implementation plan submittal is administratively complete. 42 U.S.C. 7410(k)(1)(B).

25.     If, six months after a state submits a state implementation plan, EPA has not made the completeness finding and has not found the submittal to be incomplete, the submittal is deemed administratively complete by operation of law. *Id*.

26.     EPA must take final action on an administratively complete submittal by approving in full, disapproving in full, or approving in part and disapproving in part within 12 months of the date of the submittal's completeness finding. 42 U.S.C. § 7410(k)(2) and (3).

27.     On December 13, 2008, either EPA or operation of law deemed administratively complete a Michigan submittal of the attainment demonstration, contingency measures, emission inventory, and reasonably available control measures/reasonably available control technology ("RACM/RACT") requirements for the Detroit-Ann Arbor, MI 1997 PM2.5 nonattainment area. *See,* EPA, Status of SIP Requirements for Designated Areas, Michigan: PM-2.5 (1997)/Detroit-Ann Arbor, (available

at http://www.epa.gov/air/urbanair/sipstatus/reports/mi_elembypoll.html#pm-2.5__1997__759) (last viewed July 25, 2012).

28.     Pursuant to 42 U.S.C. § 7410(k)(2) and (3), EPA has a mandatory duty to take final action on Michigan's submittal of the attainment demonstration, contingency measures, emission inventory, and RACM/RACT requirements for the Detroit-Ann Arbor, MI 1997 PM2.5 nonattainment area by no later than December 13, 2009.

29.     EPA has failed to perform this mandatory duty.

## CLAIM THREE

(Failure to take final action on administratively complete submittal by New Jersey.)

30.     Plaintiff incorporates by reference paragraphs 1 through 29.

31.     The Clean Air Act requires EPA to determine whether any state implementation plan submittal is administratively complete.  42 U.S.C. 7410(k)(1)(B).

32.     If, six months after a state submits a state implementation plan, EPA has not made the completeness finding and has not found the submittal to be incomplete, the submittal is deemed administratively complete by operation of law.  *Id*.

33.     EPA must take final action on an administratively complete submittal by approving in full, disapproving in full, or approving in part and disapproving in part within 12 months of the date of the submittal's completeness finding.  42 U.S.C. § 7410(k)(2) and (3).

34.     On May 22, 2009, either EPA or operation of law deemed administratively complete a New Jersey submittal of the attainment demonstration, contingency measures, emission inventory, and reasonably available control measures/reasonably available control technology ("RACM/RACT") requirements for the New Jersey portion of the Philadelphia-Wilmington

1997 PM2.5 nonattainment area. *See,* EPA, Status of SIP Requirements for Designated Areas, New Jersey: PM-2.5 (1997)/Philadelphia-Wilmington, (available at http://www.epa.gov/air/urbanair/sipstatus/reports/nj_elembypoll.html#pm-2.5__1997__785) (last viewed July 25, 2012).

35.     Pursuant to 42 U.S.C. § 7410(k)(2) and (3), EPA has a mandatory duty to take final action on New Jersey's submittal of the attainment demonstration, contingency measures, emission inventory, and RACM/RACT requirements for the Philadelphia-Wilmington, NJ 1997 PM2.5 nonattainment area by no later than May 22, 2010.

36.     EPA has failed to perform this mandatory duty.

## CLAIM FOUR

(Failure to determine whether a nonattainment area has attained by its attainment date.)

37.     Plaintiff incorporates by reference paragraphs 1 through 36.

38.     EPA designated the Detroit-Ann Arbor, MI area nonattainment for the 1997 PM2.5 National Ambient Air Quality Standard effective April 5, 2005.  70 Fed. Reg. 944, 980 (Jan. 5, 2005).

39.     When EPA promulgated a rule implementing the 1997 PM2.5 standard, it explained that an area with an effective designation date of April 5, 2005 would have an attainment date of no later than April 5, 2010.  72 Fed. Reg. 20586, 20600 (April 25, 2007).

40.     Thus, the attainment date for the Detroit-Ann Arbor, MI 1997 PM2.5 nonattainment area is no later than April 5, 2010.  *Id.*

41.     EPA has a mandatory duty to determine by no later than October 5, 2010, and publish notice of that determination in the Federal Register, whether the Detroit-Ann Arbor, MI 1997

PM2.5 nonattainment area has attained the 1997 PM2.5 National Ambient Air Quality Standard by the applicable attainment date. 42 U.S.C. § 7509(c)(1) and (2).

42.     EPA has failed to perform this mandatory duty.

### REQUEST FOR RELIEF

WHEREFORE, Sierra Club respectfully requests that the Court:

A.   Declare that the Administrator is in violation of the Clean Air Act with regard to her failure to perform each mandatory duty listed above;

B.   Issue a mandatory injunction requiring the Administrator to perform her mandatory duties by a certain date;

C.   Retain jurisdiction of this matter for purposes of enforcing the Court's order;

D.   Grant Sierra Club its reasonable costs of litigation, including attorneys' and expert witness fees; and

E.   Grant such further relief as the Court deems proper.

Respectfully submitted,

s/ Robert Ukeiley

Robert Ukeiley
DDC Bar No. MD 14062
Law Office of Robert Ukeiley
435R Chestnut Street, Ste. 1
Berea, KY 40403
Tel: (859) 986-5402
Fax: (866) 618-1017
Email: rukeiley@igc.org

Counsel for Sierra Club

Dated: July 26, 2012